UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| RONALD MORALES-COMAPA,<br>Petitioner,<br>v.<br>J. JOHNSON, et al,<br>Respondents. | Case No. 5:26-cv-04714-DTB<br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## PROCEEDINGS

On August 17, 2026, petitioner Ronald Morales-Comapa ("Petitioner"), proceeding pro se, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), as well as a Motion for Appointment of Counsel (Docket No. 2).

The Petition alleges the following claims: (1) Petitioner's detention is in violation of his right to substantive due process under the Fifth Amendment; (2) Petitioner's detention is in violation of his right to procedural due process under the Fifth Amendment and Immigration and Nationality Act ("INA") regulations; (3)

Petitioner must be released because there is no good reason to believe that he will be deported in the reasonably foreseeable future; and (4) Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) is ultra vires. (Petition at 19-28).[1] Petitioner seeks, among other things, his immediate release. (Id. at 28-30).

On August 20, 2026, the Court referred this matter to the Office of the Federal Public Defender ("FPD") to consider appointment of counsel. (Docket No. 7). On August 25, 2026, the FPD accepted the referral and appeared in this action as counsel for Petitioner. (Docket No. 9).

On August 26, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5), Respondents filed an Answer to the Petition ("Answer to Petition"). (Docket No. 10). In their Answer to Petition, Respondents acknowledge that Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026) ("Rodriguez Vazquez"). (Docket No. 10 at 2 ["Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, [183 F.4th 1160] (9th Cir. 2026)[.]"]). In the Answer to Petition, Respondents also state that: "[T]o the extent a bond hearing is nonetheless affirmatively ordered here, it should be consistent with what Courts in this District have generally ordered in similar cases prior to the *Bostock* ruling, which is to require an 8 U.S.C. § 1226(a) hearing to be provided in seven days. Should the Court enter relief in that regard, judgment may be entered immediately, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will then be necessary in this matter." (Id. at 3).

/ / /

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

On September 8, 2026, Petitioner filed a Notice of Intent to File Amended Petition. (Docket No. 16).

On September 25, 2026, after two extensions of time, Petitioner filed a Verified Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("FAP"). (Docket No. 21). The FAP alleges the following claims: (1) Petitioner's detention is in violation of his right to procedural due process under the Fifth Amendment; (2) Petitioner's detention is in violation of the INA; (3) Petitioner's detention is in violation of his right to substantive due process under the Fifth Amendment; and (4) the denial of bond violates the Due Process Clause of the Fifth Amendment. (FAP at 30-32). Petitioner again seeks, among other things, his immediate release. (Id. at 32-33).

On October 9, 2026, Respondents filed an Answer to the FAP ("Answer"). (Docket No. 22).

On October 21, 2026, after three extensions of time, Petitioner filed his Reply. (Docket No. 29).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner entered the United States, without inspection, in January of 2008 when he was approximately eighteen years old, over eighteen years ago. (FAP at ¶ 32). He is alleged to be a citizen of Guatemala. (Id.). He has remained in the United States since his entry and has since developed deep ties to his community in Los Angeles, California. (Id.).

/ / /

[2] The Background is taken from the FAP.

Petitioner is the primary caregiver and provides for his lawful permanent resident aunt. (Id. at ¶ 33). He assists her in paying her rent, bills, groceries, sundries, and provides additional support. (Id.).

Petitioner's family is struggling without his financial and emotional support. (Id. at ¶ 34). His cousins depend on the support Petitioner provides. (Id.).

Petitioner has held continuous or near continuous employment while present in the United States. (Id. at ¶ 35). For example, he worked for C&H Meat Company in Los Angeles for five years. (Id. at ¶ 36). In addition, he worked, prior to his current immigration confinement, for Mayen Demolition for six years and at Dwayne Montgomery Private Construction Company for seven years. (Id.).

On May 19, 2026, Petitioner was apprehended in Los Angeles while attending a court ordered rehabilitation program called 360 Health Program provided by Los Angeles County and was transferred the same day to the Adelanto ICE, Dessert Annex detention facility where he remains. (Id. at ¶ 37).

Petitioner was placed in removal proceedings whereupon he raised an asylum claim, and on July 21, 2026, his asylum claimed was denied and Petitioner received a removal order. (Id. at ¶ 38). Petitioner has since appealed that removal order, accordingly, there has been no final order of removal issued. (Id.).

Petitioner's removal proceedings remain pending before the Immigration Court. (Id. at ¶ 39). The appeal remains pending and there are no future hearings scheduled. (Id.).

Petitioner is being detained at Adelanto ICE Processing Center in Adelanto, California. (FAP at ¶ 5; see https:/locator.ice.gov/odls/#/results).

/ / /

/ / /

/ / /

/ / /

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised a claim under the Due Process Clause of the Fifth Amendment, which prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in

deportation proceedings.") (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process.") (internal quotation marks omitted). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying Mathews to due process challenge to immigration detention, and noting that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); López v. Wofford, Case No. 1:25-cv-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) (collecting cases extending Mathews "to the context of immigration detention"). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner's Due Process Claim Warrants Habeas Relief.

In his FAP, Petitioner alleges that the government's denial of the procedural protections afforded by 8 U.S.C. § 1226(a) ("Section 1226(a)") violated Petitioner's right to due process under the Fifth Amendment. (Docket No. 21 at 4, 11, 12, 16, 17, 22-24).

Initially, the Court notes that Respondents have failed to respond in substance to Petitioner's allegations in the FAP that he was denied Section 1226(a)'s procedural protections by virtue of his warrantless arrest and the failure of immigration officials to provide him with an initial custody determination. Accordingly, the Court construes Respondents' failure to contest Petitioner's due process claim as a concession to its validity pursuant to Central District of California Local Civil Rule 7-12; see also Martinez v. Sessions, 873 F.3d 655, 660 (9th Cir. 2017) ("The government does not offer any argument on the merits of this petition; therefore, it has waived any challenge to the arguments [the opposing party] raised."); Singh v. Chiang, Case No. 5:25-cv-3024-FMO-SP, 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing the government's failure to oppose argument raised by habeas petitioner as a concession); Soleimani v. Larose, Case No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where the government's answer to the petition did not respond to all claims in the petition).

Petitioner alleges that he was arrested without a warrant, and Respondents neither dispute this allegation nor allege any exception to the warrant requirement. (See FAP at 4, 24, 31; Answer, generally). Further, there is no evidence in the record that Petitioner was provided with an initial custody determination by an immigration officer following his arrest and detention. Petitioner has remained in custody since

his arrest on May 19, 2026, and there is nothing in the record before the Court to indicate that Petitioner had received a custody redetermination hearing before an immigration judge as of the date the Petition was filed on August 17, 2026. On these facts, Petitioner contends that his arrest and continued detention violate Section 1226(a) and the Due Process Clause of the Fifth Amendment. (FAP at 24). The Court agrees.

Section 1226(a) "sets out the general rule" for the arrest, detention, and release of noncitizens present in the country who are believed to be subject to removal. Nielsen v. Preap, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a Department of Homeland Security ("DHS") officer may arrest and take into custody a noncitizen "under the authority of Form I-200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). DHS officers conduct an initial custody determination. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention based on their criminal history, 8 U.S.C. § 1226(c), DHS has "the discretion either to detain the [noncitizen] or to release him on bond or parole." Nielsen, 586 U.S. at 396. The DHS officer may release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

After the initial custody determination, the noncitizen may request that an immigration judge review the DHS officer's determination at a bond hearing in immigration court. See 8 C.F.R. § 1236.1(d)(1) (permitting a noncitizen to request amelioration of the condition of release in front of an immigration judge "after an initial custody determination"), 8 C.F.R. § 1003.19 ("Custody and bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed

by an Immigration Judge pursuant to 8 CFR part 1236."). "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the [Immigration Judge] will order his release." Rodriguez Diaz, 53 F.4th at 1197 (quoting Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006)). The noncitizen can "appeal an adverse decision to the [Board of Immigration Appeals]." Id. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." Id. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the [Board of Immigration Appeals]." Id. The noncitizen may also seek judicial review of the bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." Rodriguez Diaz, 53 F.4th at 1202.

However, it appears that Petitioner was not arrested and detained pursuant to Section 1226(a), but was instead subjected to the DHS Policy, issued on July 8, 2025 and entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which DHS announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of [INA] would

serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" Bautista, 813 F. Supp. 3d at 1094 (quoting the July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1125(b)(2)(A)." Id. The Board of Immigration Appeals ("BIA") has since issued a decision agreeing with DHS's position that such individuals are properly subject to 8 U.S.C. § 1225(b) ("Section 1225(b)"). See Matter of Yajure-Hurtado, 29 I. & N. Dec. 216 (BIA 2025) .

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: (1) "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and (2) "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Jennings v. Rodriguez, 583 U.S. 281, 2877 (2018). Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

The Ninth Circuit has now held that individuals like Petitioner are properly subject to Section 1226(a). Rodriguez Vasquez v. Bostock, 183 F.4th 1160 (9th Cir. 2026). Moreover, as noted, the final judgment in Bautista has preclusive effect for members of the Bond Eligible Class like Petitioner. See Granados v. Warden, Case No. 5:26-cv-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("[I]t appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in

the Bautista final judgment."); Cortez Lozano v. Santacruz Jr., et al., Case No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026); see generally, De Corral v. Woosley, Case No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second of Judgments) § 33).

In this case, Petitioner should have received the protections mandated under Section 1226(a), including arrest pursuant to a lawful warrant (absent an applicable exception), a prompt initial custody determination by an immigration official, the opportunity to have any custody determination reviewed by an immigration judge, and the ultimate review of his custody status by the BIA. However, because the government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner has been deprived of these protections and received none of the process he was due. Petitioner alleges - and Respondents do not dispute - that Petitioner was arrested without a warrant. (FAP at 4, 24, 31). When he was taken into custody, there was no initial custody determination by an immigration official that he was a flight risk or a danger, and he was not afforded the opportunity for a custody redetermination by an immigration judge, much less review by the BIA. Notwithstanding Respondents' concession that Petitioner "is properly detained" pursuant to Section 1226(a) (Answer at 2), the government has denied Petitioner the protections afforded by the statute it now concedes is applicable.

Accordingly, the Court joins the numerous courts in the Ninth Circuit in finding that the government's noncompliance with Section 1226(a), Bautista and similar rulings warrants release. See e.g., Reyes v. Santacruz, Jr., Case No. 5:26-cv-03394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); Garcia-Maya v. Mattos, Case No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); Rodas-Dieguez v. Noem, Case No. 3:26-cv-00976-RBM-MMP, 2026

WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); Maciel v. Noem, Case No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026); see also Moctezuma v. Henkey, Case No. 1:25-cv-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). Rodriguez Diaz, 53 F.4th at 1202. As discussed, these protections include: (1) The requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an Immigration Judge at a bond hearing; (4) the right to appeal an adverse Immigration Judge bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an Immigration Judge based on changed circumstances. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. Rodriguez Diaz, 53 F.4th at 1202.

Therefore, it follows that "Petitioner's detention 'was unlawful from its inception because ICE detained him under the wrong statute and without affording him any notice or process whatsoever, much less the procedures due under Section 1226(a).'" Garcia-Maya, 2026 WL 1965886, at *8 (quoting Rodriguez-Acurio v. Almodovar, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial

decision to strip' Petitioner of his freedom." Id. (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)). Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See Garcia-Maya, 2026 WL 1965886, at *5 ("[T]his Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause."); Bautista, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"); see also Bautista, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. Zadvydas, 533 U.S. at 690 (quoting Jackson v. Indiana, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: Ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. Id. at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that he remains confined solely due to the government's refusal to comply with the judgment in Bautista.

Because Petitioner's detention has been unlawful from its initiation, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." Reyes, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the

constitutional violation never occurred." Lujan v. Garcia, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); see also United States v. Stein, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has greater force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. See United States v. Morrison, 499 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the government's continued refusal to comply with the final judgment in Bautista. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." United Aeronautical Corp. v. United States Air Force, 80 F.4th 1017, 1031 (9th Cir. 2023). While the government has appealed the Bautista final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" Garcia-Maya, 2026 WL 1965886, at *9 (quoting United States v. United Mine Workers of Am., 330 U.S. 258, 293 (1947))). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. See Hilton v. Braunskill, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); Lujan, 734 F.3d at 933.

/ / /

/ / /

/ / /

/ / /

For the reasons set forth above, the Court grants the Petition and orders Petitioner's immediate release from custody.[3]

## V.

## CONCLUSION

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner Ronald Morales-Comapa (A# 220-487-398) from custody, and return all property confiscated from him during his arrest and processing into detention; (3) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (4) Respondents shall file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: October 29, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court's determination that Petitioner is entitled to habeas relief on the due process claim alleged in the Petition renders it unnecessary for the Court to address the other claims alleged in the Petition.